IN THE MATTER OF THE PETITION OF STEPHEN UPSON TO VACATE AN ASSESSMENT, ETC.

*When the subject of an act is sufficiently expressed in its title — Chapter 872 of 1872, is constitutional — Effect of a clause in a contract requiring extra work to be done at specific prices — to what work it is not applicable.*

APPEAL from an order made at Special Term denying the application of the petitioner to vacate an assessment.

The expenses of the work for which the assessment was made, were created by changes in the grade of Fifth avenue, between Ninetieth and One Hundred and Twentieth streets, and were for regulating, grading, curbing and guttering that avenue. The changes were principally made by the commissioners of the Central Park under the authority of chapter 697 of the Laws of 1867.

The grade of the avenue was again changed in the year 1872, by the department of public works, under the authority of chapter

626 of the Laws of 1870, as that was affected by chapter 872 of the Laws of 1872. By the first of these acts, unqualified power was given to the department of public works to alter, amend and establish the grade of any street retained by them within the boundaries mentioned in its first section, and this avenue was included within that locality.

By chapter 872 of the Laws of 1872, their powers were transferred to the department of public works, so far as they related to streets, avenues and roads above Fifty-ninth street, and not embraced within the limits of any park or public place. It was in terms there provided as to such streets and avenues that all the provisions of law conferring powers, and devolving duties upon the department of public parks in relation thereto, were transferred to, and conferred upon the department of public works.

The court at General Term said: "It has been insisted as this was a local act, that it was not constitutionally enacted because the subject to which it relates was not sufficiently expressed in its title. By that it was stated to be an act in relation to the Croton aqueduct and other public works in the city of New York. But the improvement of these streets and avenues and the regulation of their grades was a public work in the city of New York, and sufficiently related to the other work mentioned, as with it to constitute only one subject. Practically the provisions all relate to one general subject-matter, and for that reason could very well be embodied in the same act. And when that appears to be the case it is not necessary that a detailed statement of the subject of the act shall be contained in the title in order to prevent its failure under the provisions of the Constitution including this subject. The provisions made by the act are local and relate only to the public works of the city, and the title applied to it was sufficiently broad to comprehend them. Upon this subject it has been held that the Constitution does not require that the title of the act should be the most exact expression of the subject which could be invented. It is enough if it fairly and reasonably announces the subject of the act. A subject is that of which anything may be affirmed or predicated, and if the various provisions have respect to or relate to local improvements the act is not obnoxious to the constitutional objection interposed, and the degree of relationship, if it legitimately tends to the

accomplishments of the general purposes, is not material. (*Matter of Mayer*, 50 N. Y., 504, 506, 507 ; *People ex rel. City of Rochester* v. *Briggs*, Id., 553 ; *Matter of Sackett, Douglas and DeGraw Streets*, 74 N. Y., 95; *Matter of Zborowski*, 68 id., 88 ; *Harris* v. *People*, 59 id., 599.)

Under these authorities as well as those referred to in the opinions given, the title of the act of 1872 may well be held to be a sufficient statement of its subject to comply with what the constitution has required for the enactment of local and special laws. By means of its authority the powers previously vested over this avenue in the department of public parks were transferred and reposed in that of public works of the city of New York.     *     *     *

It appeared that other work of a similar nature had been let by contract for the grade of the avenue in August, 1859, and that contract continued to be in force in January, 1875, when the contract was made for the performance of the work required to conform the street to the changes in its grade, established by the commissioners of the Central Park and the department of public works. The first contract contained a clause by which it was agreed that in case the grade should be changed on the avenue or the adjoining streets during the progress of the work, the contractor would conform to the altered grade at the prices estimated in his agreement as far as they were applicable. And it appeared that the expense of the additional work afterwards required to be performed at the prices stipulated for in the first contract, would have been less by the sum of $48,734.63, than as it was in fact done. For that reason it has been claimed that at least a corresponding deduction in the assessments made should be ordered, but when the first contract was entered into, no changes of this nature, under the authority of either of these departments could have been anticipated by the parties, for the laws were not then in existence under which they have been made. It could not consequently have been intended by this clause, inserted in the contract, that the contractor should be required to perform work of the nature of that ordered under the authority of these statutes. It could not by any possibility have been contemplated that such an emergency would arise, and for that reason it could not have been within the intention of the parties in making this portion of their agreement. At the time when this

contract was made, a different grade had been adopted as the established grade of the. avenue, and its object and purpose evidently was to impose upon the contractor the obligation of doing what further might become necessary by any changes in the grade of the avenue, which the authorities acting under the law, as it then existed, were at liberty to make. And that was clearly not sufficient to include the work required to be done by the action taken by these departments under the authority of the statutes afterwards enacted. That work on the contrary was a new subject-matter required to be let by itself, as it was, and performed under an agreement adapted to the state of affairs which had then arisen. And the authorities, by whose action it was made, derived their power to make it from laws not in existence at the time of the execution of the first contract. While the terms of this contract were literally broad enough to include the additional work required to be done, it would be a manifest violation of the intention of the parties to extend and apply them to the new subject-matter arising out of the final changes in the grade of the avenue which appear to have been made.

*Charles E. Miller*, for the petitioner, appellant.

*J. A. Beall*, for the mayor, etc., of New York, respondent.

Opinion by DANIELS, J.; DAVIS, P. J., concurred.

BRADY, J., dissented.

Order appealed from affirmed.